Paul Kapp, #5-2267
Patrick M. Brady, #7-5494
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Avenue
Cheyenne, Wyoming 82001
Telephone: (307) 632-6421
Email: pkapp@spkm.org
*Counsel for Plaintiff ALPS Property & Casualty Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, | |
| Plaintiff, | Case No. 18-CV-28-F |
| v. | |
| NICK E. BEDUHN; GOPPERT, SMITH & BEDUHN; KURT ACTON; TANNER BEEMER; and DAROLD BROWN, | **BRIEF IN SUPPORT OF ALPS'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to Fed. R. Civ. P. 56

and Local Rule 7.1(b)(2), submits this Brief in support of its Motion for Summary Judgment on

its claims for declaratory relief against Nick E. Beduhn ("Beduhn"), Goppert, Smith & Beduhn

("GSB" and together with Beduhn, "GSB Defendants"), Kurt Acton ("Acton"), Tanner Beemer

("Beemer"), and Darold Brown ("Brown").[1]

## I.    INTRODUCTION

This matter involves a demand by the GSB Defendants for coverage under the

2017 Policy[2], a lawyers professional liability policy issued by ALPS to GSB, with respect to the

Suits. The GSB Defendants demand coverage under the 2017 Policy for: (1) the Beemer Suit

---

[1] ALPS will refer to the GSB Defendants, Acton, Beemer, and Brown collectively as "Defendants".
[2] Unless otherwise defined, all capitalized terms in this brief shall have the meaning ascribed in ALPS's Complaint for Declaratory Relief. (ECF No. 1).

and Brown Suit, legal malpractice suits against the GSB Defendants which arose out of multiple bar complaints made against Beduhn ("Bar Complaints" and together with Suits, "Claims") prior to the effective date of the 2017 Policy, and (2) the Acton Suit, a legal malpractice suit against the GSB Defendants which arose out of a divorce case where, in August 2016, Beduhn's client replaced Beduhn as counsel midstream in the case.

There is no coverage for the Claims under the 2017 Policy because, as a matter of law, a reasonable attorney with Beduhn's knowledge objectively should have reasonably foreseen the Bar Complaints and his removal as counsel for Acton might result in claims against the GSB Defendants before the 2017 Policy's February 26, 2017 effective date. In fact, Beduhn not only possessed this knowledge, he also misrepresented the facts regarding his knowledge in the application materials to ALPS for the 2017 Policy.[3]

In addition, for the reasons described above, and because ALPS made a prompt response to the tender of the Claims from the GSB Defendants and provided a thorough analysis of its coverage positions, Beduhn's counterclaim for breach of contract, breach of good faith and fair dealing, and breach of warranty ("Counterclaim") fails as a matter of law.

The Claims may be entirely or partially outside the coverage afforded by the Policies for other reasons, and ALPS reserves the right to seek relief from the Court on those bases through a Rule 56 motion or otherwise.

---

[3] ALPS also issued a lawyers professional liability policy to GSB for the policy period February 26, 2016 to February 26, 2017 ("2016 Policy" and together with the 2017 Policy, "Policies"). It is undisputed the first notice of the Claims ALPS received was on November 1, 2017. There is no coverage for the Claims under the 2016 Policy, which provides claims made and reported coverage, because the Claims were not reported to ALPS within the policy period of the 2016 Policy, as well as for other reasons discussed below.

II.    **STATEMENT OF UNDISPUTED FACTS**

    A.    **Defendants**

1.    Beduhn is an attorney licensed and formerly practicing in Wyoming. (ECF No. 10 ¶ 2). GSB was a law firm with its principal place of business in Cody, Wyoming. Beduhn was a principle of GSB. (ECF No. 1 ¶ 4; ECF No. 10 ¶ 4; ECF No. 19 ¶ 4). Acton, Beemer, and Brown are former clients of Beduhn. (ECF No. 1 ¶¶ 5-7; ECF No. 10 ¶¶ 5-6; ECF No. 18 ¶¶ 5-7; ECF No. 19 ¶¶ 5-7).

    B.    **The Wyoming Bar Complaints**

        1.    **Brown's February 17, 2016 Bar Complaint**

2.    On February 17, 2016, Brown submitted a complaint to the Wyoming Office of Bar Counsel ("Bar Counsel") regarding Beduhn's representation of him in a custody and visitation matter. (ECF No. 1, Ex. 1 ¶ 15; ECF No. 10 ¶ 10; ECF No. 18 ¶ 10; ECF No. 19 ¶ 10).

3.    Brown alleged Beduhn neglected to produce discovery materials to the opposing party after Brown provided the documents to Beduhn. (ECF No. 1, Ex. 1 ¶ 15). Brown alleged this failure "cost [Brown] any chance [he] had for a [reasonable] outcome" in the case because the court precluded Brown from offering witnesses or introducing exhibits at trial as a result of the failure to engage in discovery. (ECF No. 1, Ex. 1 ¶¶ 13, 15; ECF No. 1 ¶ 11; ECF No. 10 ¶ 11; ECF No. 18 ¶ 11; ECF No. 19 ¶ 11).

4.    Bar Counsel forwarded Brown's February 17, 2016 complaint to Beduhn and requested a response by March 3, 2016. (ECF No. 1, Ex. 1 ¶ 15; ECF No. 10 ¶ 12; ECF No. 18 ¶ 12; ECF No. 19 ¶ 12). On March 10, 2016, Bar Counsel responded to a request from Beduhn for an extension of time to respond to Brown's complaint and advised Beduhn: "I am very concerned about the state of your practice." (ECF No. 1, Ex. 1 ¶ 15). Bar Counsel also

informed Beduhn about other concerns raised by district court judges regarding Beduhn's "neglect of client matters." (*Id*.).

### 2.    Ribera's March 2016 Complaint

5.    On March 7, 2016, Jennifer Ribera, a former client of Beduhn, filed a complaint with Bar Counsel alleging Beduhn "failed to keep her informed of  . . . [her divorce and child custody] case".  (ECF No. 1, Ex. 1 ¶¶ 19, 23; ECF No. 10 ¶ 20; ECF No. 19 ¶ 20).   Ribera alleged Beduhn did not inform her about a hearing on motions to compel and for sanctions until shortly before the hearing.  (ECF No. 1, Ex. 1 ¶¶ 18-19).

6.    The hearing was required, according to Bar Counsel, because Beduhn was "non-compliant with discovery."  (ECF No. 1, Ex. 1 ¶¶ 18-19).  Ribera's petition for modification was dismissed and sanctions, plus an order of contempt, were granted against Ribera reportedly as a result of Beduhn's failure to appear at the August 17, 2015 hearing.  (*Id*. ¶¶ 18, 21).  Sanctions of $4,161.58 were awarded.  (*Id*. ¶ 18).

7.    On March 11, 2016, Bar Counsel sent Beduhn a copy of Ribera's complaint and requested a response.  (ECF No. 1, Ex. 1 ¶¶ 19, 23; ECF No. 10 ¶ 18; ECF No. 19 ¶ 18).  On May 4, 2016, Bar Counsel granted Beduhn an extension of time to answer, but informed Beduhn: "From my perspective, your conduct is harming your clients."  (ECF No. 1, Ex. 1 ¶ 23).

### 3.    April 2016 Complaints From Judges Fenn and Cranfill

8.    On April 6, 2016 and April 12, 2016, Bar Counsel received separate correspondence from district court judges John Fenn and Steven Cranfill complaining of Beduhn's conduct.  (ECF No. 1, Ex. 1 ¶¶ 27-29; ECF No. 10 ¶ 23; ECF No. 19 ¶ 23).

9.    Judge Cranfill's correspondence "report[ed] [on] Beduhn's conduct" in the Brown and Beemer matters.   (ECF No. 1, Ex. 1 ¶ 29; ECF No. 1 ¶ 24; ECF No. 10 ¶ 24;

ECF No. 19 ¶ 24).   Judge Cranfill stated: "In both cases, Mr. Beduhn failed to timely file a pretrial memorandum.  In both cases, Mr. Beduhn was sanctioned by not allowing any witnesses other than his client to testify and no introduction of evidence."  (ECF No. 1, Ex. 1 ¶ 29).

10.     Judge Fenn expressed similar concerns in his correspondence, advising: "[T]his is the second instance in which [a failure to appear at a scheduled pretrial conference by Beduhn] has happened in the past year."  (ECF No. 1, Ex. 1 ¶ 27).  He suggested: "[T]his may indicate a pattern that only a disciplinary investigation may uncover."  (*Id.*).

11.     Bar Counsel forwarded Judge Fenn's and Judge Cranfill's respective complaints to Beduhn and requested he respond by April 20, 2016 and May 2, 2016, respectively. (ECF No. 1, Ex. 1 ¶ 23; ECF No. 1 ¶ 25; ECF No. 10 ¶ 25; ECF No. 19 ¶ 25).

12.     On May 4, 2016, Bar Counsel advised it planned to move for Beduhn's immediate suspension unless Beduhn responded to the multiple complaints pending against him by May 5, 2016.   (ECF No. 1, Ex. 1 ¶ 23; ECF No. 1 ¶ 26; ECF No. 10 ¶ 26; ECF No. 19 ¶ 26).  Beduhn obtained another extension and responded to the complaints on May 9, 2016.  (*Id.*).

**4.     Beemer's January 4, 2017 Bar Complaint**

13.     On January 4, 2017, Bar Counsel received another complaint regarding Beduhn from Beemer.  (ECF No. 1, Ex. 1 ¶ 33; ECF No. 1 ¶ 27; ECF No. 10 ¶ 27; ECF No. 18 ¶ 27; ECF No. 19 ¶ 27).   Beemer's complaint alleged, *inter alia*, Beduhn missed multiple court deadlines and failed to communicate with Beemer.  (ECF No. 1, Ex. 1 ¶ 33; ECF No. 1 ¶ 28; ECF No. 10 ¶ 28; ECF No. 18 ¶ 28; ECF No. 19 ¶ 28).

14.     Beemer alleged Beduhn's failure to comply with discovery deadlines resulted in the filing of a motion to compel against him which "created extra fees that I eventually had to

pay, not through fault of my own, but from the negligence of my attorney." (ECF No. 1, Ex. 1 ¶ 33). Beemer also reported he was not allowed to present evidence or witnesses at trial other than his own testimony. (*Id.*) Beemer further stated an appeal Beduhn filed was dismissed as a result of missed deadlines. (*Id.* ¶¶ 33, 40). Beemer alleged he paid a sanction of $575.85 as a result of Beduhn's failure to produce required discovery. (*Id.* ¶ 33).

15.     Beemer further alleged he had paid $500 to order a trial transcript for an appeal which transcript was not obtained. (ECF No. 1, Ex. 1 ¶¶ 36-37).

16.     Beemer stated: "[A]s the process has played out, I have come to see just how misrepresented I was throughout the entire process." (ECF No. 1, Ex. 1 ¶ 33).

17.     Bar Counsel sent Beemer's complaint to Beduhn and requested a response by January 20, 2017. (ECF No. 1, Ex. 1 ¶ 34; ECF No. 1 ¶ 29; ECF No. 10 ¶ 29; ECF No. 18 ¶ 29; ECF No. 19 ¶ 29). Beduhn received the complaint and asked for an extension to respond until January 24, 2017. (ECF No. 1, Ex. 1 ¶ 34).

### C.     GSB's February 22, 2017 Application to ALPS

18.     On February 27, 2017, GSB submitted an application to ALPS for lawyers professional liability insurance ("2017 Application") executed by J. Travis Smith. (ECF No. 1 ¶ 30; ECF No. 10 ¶ 30; ECF No. 19 ¶ 30).[4]

19.     The 2017 Application did not identify the Bar Complaints and did not disclose any potential claims against the GSB Defendants, either arising out of the Bar Complaints or otherwise. (ECF No. 1 ¶ 31; ECF No. 10 ¶ 31; ECF No. 19 ¶ 31).[5]

---

[4] A copy of the 2017 Application is attached as Exhibit A.

[5] Smith answered "No" to the following questions on the 2017 Application: (a) "Are you or any member of the firm aware of or do you or any member of the firm have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former attorney in the firm or its predecessors, regardless of the merit of such claim that has not already been reported to ALPS?"; (b) "Has any member of the firm had an investigation, inquiry, or disciplinary complaint made to any court, administrative agency, or regulatory body in the past year?"; and (c) "Has any attorney in your firm been refused admission to

20.     The Individual Attorney Supplement to the 2017 Application Beduhn executed on February 22, 2017 did not identify the Bar Complaints and did not disclose any potential claims against Beduhn, either arising out the Bar Complaints or otherwise.   (ECF No. 1 ¶ 32; ECF No. 10 ¶ 32; ECF No. 19 ¶ 32).[6]

21.     On February 27, 2017, GSB submitted its acceptance page for the 2017 Policy. The acceptance page confirmed "there exists no changes to the answers and information set forth in the [2017] Application the firm has submitted to ALPS, including all supplements and attachments thereto."   (ECF No. 1 ¶ 33, ECF No. 10 ¶ 33; ECF No. 19 ¶ 33).[7]

**D.     The Policies**

22.     ALPS issued the 2016 Policy to GSB for the policy period February 26, 2016 to February 26, 2017.   (ECF No. 1, Ex. 8, Declarations; ECF No. 1 ¶ 67; ECF No. 10 ¶ 67; ECF No. 19 ¶ 67).

23.     ALPS issued the 2017 Policy to GSB for the policy period February 26, 2017 to February 26, 2018.   (ECF No. 1, Ex. 9, Declarations; ECF No. 1 ¶ 81; ECF No. 10 ¶ 81; ECF No. 19 ¶ 81).

24.     Beduhn is identified as an individual insured attorney in the Policies' Declarations.   (ECF No. 1, Exs. 8 & 9, Declarations Item 2).

25.     The Policies provide legal professional liability insurance on a claims made and reported basis.   (ECF No. 1, Exs. 8 & 9, § 1.1).   The Policies provide:

> THIS IS A 'CLAIMS MADE AND REPORTED' INSURANCE POLICY. THEREFORE, AS A CONDITION PRECEDENT TO THE COMPANY'S

---

practice, disbarred, suspended from practice, or been formally reprimanded by any court, administrative agency or regulatory body in the past year; or is any attorney under investigation?"  (Ex. A at 2).

[6] On his Individual Attorney Supplement to the 2017 Application, Beduhn answered "No" to the question: "Are you aware or do you have knowledge of any fact, circumstance, act, error or omission that could reasonably be expected to be the basis of a claim against you, regardless of the merits of such a claim?"  (Ex. A at 6).

[7] A copy of the 2017 acceptance page is attached as Exhibit B.

OBLIGATION TO DEFEND OR INDEMNIFY THE INSURED UNDER THIS POLICY, THE INSURED MUST IMMEDIATELY REPORT ANY CLAIM TO ALPS DURING THE POLICY PERIOD OR DURING ANY APPLICABLE EXTENDED REPORTING PERIOD.  NO COVERAGE EXISTS UNDER THIS POLICY FOR A CLAIM WHICH IS FIRST MADE AGAINST THE INSURED OR FIRST REPORTED TO ALPS BEFORE OR AFTER THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD.

(ECF No. 1, Exs. 8 & 9, at 1).

26.     The insuring agreement for the Policies states, in relevant part:

. . . [T]he Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that:

1.1.1   the Claim arises from an act, error, omission or Personal Injury that happened on or after the Loss Inclusion Date and the Retroactive Coverage Date set forth in Items 2 and 3 of the Declarations, and that the claim arises from or is in connection with:

(a)   an act, error or omission in Professional Services that were or should have been rendered by the Insured . . . .

1.1.2   at the Effective Date of this policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim[.]

* * *

1.2.1 . . . The Company shall not have a duty to defend or to pay [claim] expenses as to any Claim not covered under this Policy . . . for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(ECF No. 1, Exs. 8 & 9, §§ 1.1-1.2.1).

27.     "Claim" is defined in the Policies as "a demand for money or services, including but not limited to the service of suit or institution of arbitration proceedings against the Insured[.]"  (ECF No. 1, Exs. 8 & 9, § 2.3).

28.     The Policies do not apply to any claim arising from or in connection with:

> Any act, error, omission or Personal Injury that occurred prior to the Effective Date of this Policy, if . . . [p]rior to the Effective Date . . . any Insured gave or should have given, to any insurer, notice of a Claim or potential Claim arising from the act, error, omission, or Personal Injury, or from any act, error, omission, or Personal Injury in related Professional Services.

(ECF No. 1, Exs. 8 & 9, § 3.1.5(c)).

### E.     Beduhn Disciplinary Proceedings – July 2017 Report and Suspension Order

29.     On July 13, 2017, as a result of disciplinary proceedings against Beduhn, the Wyoming Board of Professional Responsibility ("WBPR") issued the July 2017 Report. (ECF No. 1, Ex. 1; ECF No. 1 ¶ 37; ECF No. 10 ¶ 37; ECF No. 19 ¶ 37).

30.     In the July 2017 Report, the WBPR determined, *inter alia*, there were violations of duties owed to Beduhn's clients, the legal system, and the profession, and that Beduhn "inflicted serious injury upon his clients . . . and upon the legal system." (ECF No. 1, Ex. 1 ¶¶ 44, 56-57; ECF No. 1 ¶ 38; ECF No. 10 ¶ 38; ECF No. 19 ¶ 38).

31.     On August 24, 2017, the Wyoming Supreme Court entered an Order of Two Year Suspension from the Practice of Law ("Suspension Order"), which adopted the July 2017 Report. (ECF No. 1, Ex. 2 ¶¶ 1-2).   In the Suspension Order, the Wyoming Supreme Court ordered Beduhn suspended from the practice of law for two years beginning May 10, 2017.  (*Id.* ¶ 3).

### F.     The Suits

32.     On October 20, 2017, three of Beduhn's former clients—Acton, Brown, and Beemer—filed separate legal malpractice suits against the GSB Defendants.  (ECF No. 1 ¶ 43; ECF No. 10 ¶ 43; ECF No. 18 ¶ 43; ECF No. 19 ¶ 43).

### 1.    Acton Suit

33.    Beduhn's representation of Acton in Acton's divorce proceedings ("Acton Divorce Suit") began in 2015 and lasted through approximately August 10, 2016. (ECF No. 1 ¶ 45; ECF No. 10 ¶ 45; ECF No. 18 ¶ 45; ECF No. 19 ¶ 45).

34.    In the Acton Divorce Suit, when Beduhn was counsel for Acton, a contempt order was entered against Acton on January 11, 2016.  (ECF No. 1, Ex. 7).   Subsequently, after another contempt motion was filed against Acton on July 21, 2016 (ECF No. 1, Ex. 7), Beduhn was replaced as counsel for Acton in August 2016 by Christopher King, who represents Acton, Brown, and Beemer in their suits against Beduhn.  (ECF No. 1, Ex. 6).

35.    GSB concedes that "[b]y August 10, 2016, when King replaced Beduhn as Acton's counsel in the Acton Divorce Suit, Beduhn knew or reasonably should have known or foreseen he had breached a professional duty owed Acton in the Acton Divorce Suit and that Beduhn's conduct in the Acton Divorce Suit might be the basis of a claim against Beduhn by Acton." (ECF No. 1 ¶ 135; ECF No. 19 ¶ 135).[8]

36.    The Acton Suit was filed October 20, 2017 and alleges Beduhn committed the following "acts of legal malpractice", among others, with respect to his representation of Acton in the Acton Divorce Suit: (a) failure to produce discovery responses on behalf of Acton; (b) failure to file discovery requests on behalf of Acton; (c) failure to provide witness and exhibit lists; (d) failure to respond to opposing counsel's correspondence; (e) failure to inform Acton of opposing counsel's concerns regarding Beduhn's representation of Acton; (f) failure to advise Acton as to Beduhn's inability to provide competent representation; (g) failure to reimburse Acton for all legal fees paid to Beduhn during the course of Beduhn's "negligent representation";

---

[8] Beduhn concedes he was replaced in the Acton Divorce Suit in August 2016 (ECF No. 18 ¶ 45), but disputes he reasonably should have known or foreseen that his conduct in the Acton Divorce Suit might be the basis of a claim, something which GSB again admits (ECF No. 1 ¶ 135; ECF No. 18 ¶ 135; ECF No. 19 ¶ 135).

(h) failure to properly communicate; (i) failure to inform Acton of an attorneys' fees award entered against Acton for Beduhn's conduct; (j) failure to pursue a "directed course of litigation"; and (k) "failure to properly calculate child support causing severe overpayment related to [Acton's] income being calculated on a gross amount instead of a net amount." (ECF No. 1, Ex. 3 ¶ 8; ECF No. 1 ¶ 46; ECF No. 10 ¶ 46; ECF No. 18 ¶ 46; ECF No. 19 ¶ 46).

37.     The Acton Suit further alleges the GSB Defendants (a) breached their express and implied contractual obligations to Acton, and (b) breached their fiduciary duties to Acton by "failing to properly counsel and advise [Acton], by placing their own interests above [Acton's] and by generally mishandling and mismanaging" Acton's divorce proceedings.   (ECF No. 1, Ex. 3 ¶¶ 21, 24-29).   Acton alleges the GSB Defendants' breaches of fiduciary duties "were committed willfully and/or with gross negligence", entitling Acton to punitive damages. (ECF No. 1, Ex. 3 ¶ 23).

38.     The Acton Suit alleges Beduhn's actions as counsel for Acton in the Acton Divorce Suit were "extremely similar to" Beduhn's actions as determined by Bar Counsel and which form the basis of Beduhn's suspension from the practice of law by the Wyoming Supreme Court; Acton attached the Suspension Order to his complaint against Beduhn.   (ECF No. 1, Ex. 3 ¶ 18).

39.     Acton alleges the following damages in the Acton Suit: (a) costs and attorney's fees to "rectify the situation created by [Beduhn's] legal malpractice", including legal fees to new counsel and appellate costs; (b) financial harm caused by Beduhn's legal malpractice; and (c) punitive damages.  (ECF No. 1, Ex. 3 ¶¶ 16-17, 22-23 & Prayer for Relief).

### 2.     Beemer Suit

40.     The Beemer Suit alleges Beduhn represented Beemer in a child custody proceeding and committed various "acts of legal malpractice", including, but not limited to, (a) failing to reimburse Beemer for all legal fees paid to Beduhn during the course of Beduhn's "negligent representation", and (b) mismanagement of client funds held in GSB's trust account. (ECF No. 1, Ex. 4 ¶¶ 7-8).

41.     Beemer further alleges the GSB Defendants (a) breached their express and implied contractual obligations to Beemer, and (b) breached their fiduciary duties to Beemer by "failing to properly counsel and advise [Beemer], by placing their own interests above [Beemer's] and by generally mishandling and mismanaging [Beemer's child custody] case." (ECF No. 1, Ex. 4 ¶¶ 21).   Beemer alleges the GSB Defendants' breaches of fiduciary duties "were committed willfully and/or with gross negligence", entitling Beemer to punitive damages. (ECF No. 1, Ex. 4 ¶ 23).

42.     Beemer alleges the following damages in the Beemer Suit: (a) lost custody of Beemer's child; (b) costs and attorney's fees to "rectify the situation created by [Beduhn's] legal malpractice", including legal fees to new counsel and appellate costs; (c) emotional and financial harm caused by Beduhn's legal malpractice; and (d) punitive damages.  (ECF No. 1, Ex. 4 ¶¶ 14, 16-17, 22-23 & Prayer for Relief).

### 3.     Brown Suit

43.     The Brown Suit alleges Beduhn represented Brown in a child custody and visitation modification proceeding and committed various "acts of legal malpractice", including, but not limited to, failing to reimburse Brown for all legal fees paid to Beduhn during the course of Beduhn's "negligent representation".  (ECF No. 1, Ex. 5 ¶¶ 7-8).

44.     Brown further alleges the GSB Defendants (a) breached their express and implied contractual obligations to Brown, and (b) breached their fiduciary duties to Brown by "failing to properly counsel and advise [Brown], by placing their own interests above [Brown's] and by generally mishandling and mismanaging [Brown's child custody] case."   (ECF No. 1, Ex. 5 ¶¶ 21, 24-29).   Brown alleges the GSB Defendants' breaches of fiduciary duties "were committed willfully and/or with gross negligence", entitling Brown to punitive damages. (ECF No. 1, Ex. 5 ¶ 23).

45.     Brown alleges the following damages in the Brown Suit: (a) lost custody of Brown's children; (b) costs and attorney's fees to "rectify the situation created by [Beduhn's] legal malpractice", including legal fees to new counsel and appellate costs; (c) emotional and financial harm caused by Beduhn's legal malpractice; and (d) punitive damages.   (ECF No. 1, Ex. 5 ¶¶ 14, 16-17, 22-23 & Prayer for Relief).

### G.     Notice to ALPS and ALPS's Coverage Position

46.     By correspondence dated November 1, 2017 ("November 1, 2017 Correspondence"), GSB first notified ALPS of the Suits, provided ALPS with copies of the complaints in the Suits, and sought coverage with respect to the Claims under the Policies. (ECF No. 1 ¶ 92; ECF No. 19 ¶ 92).

47.     The November 1, 2017 Correspondence was the first notice GSB provided to ALPS of the Bar Complaints against Beduhn, the July 2017 Report, and the Suspension Order. (ECF No. 1 ¶ 94; ECF No. 19 ¶ 94).

48.     By correspondence dated November 17, 2017, Beduhn separately provided his first notice of the Suits to ALPS and informed ALPS of his suspension from the practice of law. (ECF No. 1 ¶ 95; ECF No. 10 ¶ 95).

49.    On November 28, 2017, ALPS denied coverage for the GSB Defendants with respect to the Suits.  (ECF No. 1 ¶ 96; ECF No. 10 ¶ 96; ECF No. 19 ¶ 96).[9]

## III.    LEGAL STANDARDS

### A.    Summary Judgment

Pursuant to Rule 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013); *Nat'l Union Fire Co. of Pittsburgh v. Toland*, 164 F. Supp. 3d 1330, 1333 (D. Wyo. 2016).  A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Becker*, 709 F.3d at 1022; *Toland*, 164 F. Supp. 3d at 1333.  A dispute of fact is "material if under the substantive law it is essential to the proper disposition of the claim."  *Toland*, 164 F. Supp. 3d at 1333.

Summary judgment is proper if no reasonable trier of fact could find other than for the moving party on the evidence presented.  *Id*.  In evaluating the evidence presented, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position" will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The party opposing summary judgment "cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial."  *Toland*, 164 F. Supp. 3d at 1334; Fed. R. Civ. P. 56(c)(1)(A)&(B); *Cunningham v. Jackson Hole Mtn. Resort Corp.*, No. 15-CV-07-F, 2016 WL 9080240, at *1 (D. Wyo. Feb. 17, 2016) (non-moving party must offer "more than conjecture and speculation" to defeat summary

---

[9] A copy of the November 28, 2017 correspondence from ALPS to GSB is attached as Exhibit C.

judgment).  Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude . . . summary judgment." *Anderson*, 477 U.S. at 248.

### B.    Wyoming Insurance Law[10]

In Wyoming, the interpretation of an insurance policy presents a question of law.  *Colo. Cas. Ins. Co. v. Sammons*, 2007 WY 75, ¶ 10, 157 P.3d 460, 465 (Wyo. 2007).  Insurance contracts are construed in the same manner as other contracts, and "[a]s with other types of contracts, [the court's] basic purpose in construing or interpreting an insurance contract is to determine the parties' true intent."  *Id*. at ¶ 12, 157 P.3d at 465.  When the "terms of the [insurance] policy are clear and not ambiguous, the policy must be interpreted by applying the ordinary and usual meaning of its terms without looking beyond the four corners of the policy."  *Shoshone First Bank v. Pac. Emp'rs Ins. Co.*, 2 P.3d 510, 513 (Wyo. 2000); *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1185 (10th Cir. 2000).

## IV.   ARGUMENT

### A.    The Claims Are Outside the Coverage Afforded by the 2017 Policy Because an Insured Had Knowledge the Acts, Errors or Omissions Underlying the Claims Might Be the Basis of Claims Prior to the 2017 Policy's February 26, 2017 Effective Date.

The 2017 Policy requires, "at the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a claim[.]"  (ECF No. 1, Ex. 9 § 1.1.2).  The 2017 Policy specifically excludes coverage for any claim arising from or in connection with any act, error, or omission that occurred prior to the effective date if, "[p]rior to the Effective Date of this Policy, any Insured gave or should have given, to any insurer, notice of a Claim or potential Claim arising from the

---

[10]  Under Wyoming's choice of law rules—which apply because this case was brought under the Court's diversity jurisdiction—Wyoming law applies to interpretation of the Policies because the Policies were issued in Wyoming. *Boone v. MVM, Inc.*, 572 F.3d 809, 811 (10th Cir. 2009); *McPhail v. Deere & Co.*, 529 F.3d 947, 957 (10th Cir. 2008).

act, error, omission, or Personal Injury, or from any act, error, omission, or Personal Injury in Related Professional Services[.]" (ECF No. 1, Ex. 9 § 3.1.5(c)).

Whether an insured should reasonably have foreseen an act might be the basis of a claim is measured by a subjective-objective test which evaluates what a reasonable attorney objectively would have known or reasonably should have foreseen based on the knowledge possessed by the insured. *E.g.*, *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1303 (10th Cir. 2011) (citations omitted) (explaining the subjective prong of the test was "whether the insured knew of certain facts" and the objective prong, based on policy language, was whether an insured "could reasonably have foreseen [those facts] might result in a claim", and finding a prior knowledge condition had been satisfied and the policy afforded no coverage because an insured knew or could reasonably have foreseen a claim might result as of the policy's inception date); *Westport Ins. Corp. v. Markham Grp. Inc. PS*, 403 F. App'x 264, 265 (9th Cir. 2010) (applying "any reasonable insured" standard); *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 237 (3d Cir. 2006) (concluding coverage turns on insured's actual knowledge and objective consideration of "whether a reasonable professional in the insured's position might expect a claim or suit to result").

Courts have concluded an attorney who receives notice of a bar complaint from a client against the attorney is reasonably aware the bar complaint might be the basis of a claim against the attorney as a matter of law. *See, e.g.*, *Maynard v. Westport Ins. Corp.*, 208 F. Supp. 2d 568, 571, 576 (D. Md. 2002) ("[A]n objectively reasonable attorney knew or should have known that the [plaintiffs] had a potential legal malpractice claim" based on their bar complaint, and a reasonable attorney "would have responded affirmatively" in the application for insurance when asked whether there were potential claims against him.).

Here, by early January 2017, prior to the February 26, 2017 effective date of the 2017 Policy, Bar Counsel had notified Beduhn of the Bar Complaints pending against him. (ECF No. 1, Ex. 1 ¶¶ 15, 19, 23, 27-29, 33-34). Specifically, Bar Counsel notified Beduhn of: (1) Brown's complaint and allegations against Beduhn in late February 2016; (2) Ribera's complaint and allegations against Beduhn by correspondence dated March 10, 2016; (3) various district court judges' complaints against Beduhn in April 2016, including Judge Cranfill's complaint; and (4) Beemer's complaint and allegations against Beduhn in early January 2017. (ECF No. 1, Ex. 1 ¶¶ 15, 19, 23, 27-29, 33-34). Beduhn also had knowledge of the adverse results for his client in the Acton Divorce Suit via contempt orders and his client's replacement of him as counsel. (ECF No. 1, Ex. 7 at 2; ECF No. 1 ¶ 45; ECF No. 10 ¶ 45; ECF No. 18 ¶ 45; ECF No. 19 ¶ 45). By August 10, 2016, when Beduhn was replaced as counsel for Acton, Beduhn also knew or reasonably should have foreseen he had breached a professional duty owed to Acton in the Acton Divorce Suit which might be the basis of a claim against Beduhn. (ECF No. 1 ¶ 135, ECF No. 18 ¶ 135).

Beduhn knew, prior to February 26, 2017, his former clients were entirely dissatisfied and alleging, among other things: (1) Beduhn had missed multiple court deadlines and failed to communicate with the clients (ECF No. 1 ¶ 28; ECF No. 10 ¶ 28; ECF No. 18 ¶ 28); (2) Beduhn failed to comply with discovery deadlines, which in one case resulted in the filing of a motion to compel which the client believed "created extra fees that [the client] eventually had to pay, not through fault of my own, but from the negligence of my attorney"; (ECF No. 1, Ex. 1 ¶ 33); (3) Beduhn's failure to comply with court deadlines prevented clients from presenting evidence or witnesses at trial other than their own testimony; (ECF No. 1, Ex. 1 ¶¶ 13, 15, 29, 33, 40); (4) one of Beduhn's clients believed Beduhn's alleged failures to comply with deadlines had

"cost [the client] any chance [he] had for a [reasonable] outcome" in his case (ECF No. 1, Ex. 1 ¶¶ 13, 15); and (5) an appeal Beduhn filed for a client was dismissed as a result of missed deadlines.  (ECF No. 1, Ex. 1 ¶¶ 33, 40).

Beduhn also had knowledge, prior to February 26, 2017, that: (1) Bar counsel had advised him: "I am very concerned about the state of your practice" and believed Beduhn's conduct was "harming [his] clients"; (2) district court judges had raised concerns regarding Beduhn's "neglect of client matters"; and (3) a client stated Beduhn had "misrepresented [him] . . . throughout the entire process" of his representation.  (ECF No. 1, Ex. 1 ¶¶ 15, 23, 33).

The claims made and reported 2017 Policy does not provide coverage for acts, errors, or omissions where, prior to the February 26, 2017 effective date, any insured "knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim." (ECF No. 1, Ex. 9 § 1.1.2).  The 2017 Policy also precludes coverage for claims if, "[p]rior to the Effective Date of this Policy, any Insured gave or should have given, to any insurer, notice of a Claim or potential Claim arising from the act, error, omission, or Personal Injury, or from any act, error, omission, or Personal Injury in Related Professional Services[.]" (ECF No. 1, Ex. 9 § 3.1.5(c)).  Beduhn's knowledge, prior to February 26, 2017, of the multiple Bar Complaints against him and his replacement in the Acton Divorce Suit, precludes coverage for the Claims under the 2017 Policy because, as a matter of law, a reasonable insured possessing Beduhn's undisputed knowledge would have known or foreseen that his acts, errors, and omissions might be, and indeed were, the basis of the Claims.  *See, e.g.*, *Cohen-Esrey*, 636 F.3d at 1306 (policy's prior-knowledge condition barred coverage for insured's liability caused by its employee's embezzlement scheme); *Westport Ins. Corp.*, 403 F. App'x at 265 (insured's prior knowledge that client's case had been dismissed precluded coverage); *Coregis Ins. Co. v.*

*Baratta & Fenerty, LTD*, 264 F.3d 302, 307 (3d Cir. 2001) (citation omitted) (insureds "knew [the clients] were dissatisfied with the legal representation they had received" and "[a] reasonable attorney also would have realized that he had a dissatisfied client who would undoubtedly take further legal action absent a miraculous and unlikely turnaround in events"); *Schwartz Manes Ruby and Slovin, L.P.A. v. Monitor Liab. Managers, LLC*, 483 Fed. Appx. 241, 246 (6th Cir. 2012) (attorney held to reasonably expect claim where there were "adverse" litigation results and "client had retained new counsel").

While misrepresentations by Beduhn are not necessary to determine the 2017 Policy affords no coverage for the Claims, Beduhn did misrepresent his knowledge of the Bar Complaints and the objective possibility of the Claims.   Beduhn, for example, answered "no" to the application query about whether he had "knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against [him], regardless of the merit of such claim" in his Individual Attorney Supplement to the 2017 Application. (Ex. A at 6).  Beduhn's statement is objectively false, considering his knowledge of the multiple Bar Complaints against him at the time.

Considering Beduhn's knowledge of his own acts, errors, and omissions, the Bar Complaints, and actions taken against him by his clients prior to the 2017 Policy's February 26, 2017 effective date, as a matter of law, an Insured (*i.e.*, Beduhn) knew, or reasonably should have known or foreseen, the Suits might result.  The 2017 Policy therefore does not provide coverage for the Suits and ALPS is entitled to summary judgment on this basis.

### B.      The Claims Are Outside the Coverage Afforded by the 2016 Policy.

The 2016 Policy provides legal professional liability insurance on a claims made and reported basis.  (ECF No. 1, Ex. 8, Insuring Agreements § 1.1).  Specifically, the 2016 Policy

provides "no coverage exists under this policy for a claim which is . . . first reported to ALPS . . . after the policy period."  (ECF No. 1, Ex. 8 at 1).

The Wyoming Supreme Court has analyzed claims made insuring provisions and, as have courts in other jurisdictions, held such provisions are unambiguous, valid, and enforceable. *See, e.g.*, *Doctors' Co. v. Ins. Corp. of Am.*, 864 P.2d 1018, 1027-28 (Wyo. 1993) ("claims made and reported" policies limit coverage to claims first made and reported during the policy period); *Peterson v. Home Ins. Co. of Ind.*, Nos. 03-1186, 03-1194, 2004 WL 2862309, at *3 (10th Cir. Dec. 14, 2004) (Claims made and reported policies "are designed to limit liability to a fixed period of time.  To allow coverage beyond that period would be to grant the insured more coverage than he bargained for and paid for[.]") (citation omitted); *Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 342 (7th Cir. 2013) (claims made policy unambiguously limits coverage for claims made during policy period); *Westport Ins. Corp.*, 403 F. App'x at 266 (claims made and reported policy requires that claim be first made and reported during same policy period); *Heydar v. Westport Ins. Corp.*, 158 F. App'x 774, 775 (9th Cir. 2005) (no coverage for claim made during 2000-2001 policy period and reported during 2001-2002 policy period).

The policy period of the 2016 Policy is February 26, 2016 to February 26, 2017. (ECF No. 1, Ex. 8 at Declarations).  No coverage exists under the 2016 Policy for the Claims because no potential or actual claim was reported to ALPS during the policy period of the 2016 Policy.  It is undisputed the Claims, or the potential for them, were first reported to ALPS in November 2017.  (ECF No. 1 ¶¶ 94-95; ECF No. 10 ¶ 95; ECF No. 19 ¶ 94).  Because neither the Claims nor the potential for them were first reported to ALPS in the policy period of the 2016

Policy, the 2016 Policy affords no coverage for the Claims under the 2016 Policy.[11]   ALPS is entitled to summary judgment on this basis.

### C.   ALPS Is Entitled to Summary Judgment as to Beduhn's Counterclaim.

Beduhn purports to allege three causes of action against ALPS in his Counterclaim— breach of contract, breach of the duty of good faith and fair dealing, and breach of representations and warranties (ECF No. 10 at 7-9)—all of which fail as a matter of law.

### 1.   Beduhn's Breach of Contract Claim Fails as a Matter of Law.

Beduhn contends ALPS is in breach of the 2017 Policy because "[t]he Defendants' malpractice suits were not foreseen, and these suits have not been adjudicated." (ECF No. 10 at 7, ¶ 2).   Beduhn further alleges he "believed ALPS would defend . . . GSB and Beduhn . . . and until it is litigated, the Complaints are merely allegations."   (*Id.* at 7, ¶ 3). Beduhn's contentions are meritless and incorrect.

First, Beduhn appears to contend the Claims were not "foreseen" by him.   Beduhn's apparent attempt to apply a standard of subjective knowledge to the foreseeability of the Claims fails as a matter of law for reasons ALPS has already discussed *supra* in Section IV.A.   Under the unambiguous terms of the 2017 Policy and Wyoming law, the foreseeability of the Claims is an objective inquiry.   No reasonable attorney with knowledge of the Bar Complaints, the acts, errors, or omissions underlying the Bar Complaints, and the problems in the Acton Divorce Suit could reasonably contend future claims arising therefrom were unforeseeable.

Second, Beduhn appears to contend ALPS has an obligation to defend him under the 2017 Policy regardless of whether the 2017 Policy potentially affords coverage for the Claims.

---

[11] Had actual or potential claims been reported to ALPS in the policy period of the 2016 Policy, coverage under the 2016 Policy would be precluded for other and separate reasons not discussed here.   None of the Defendants, and specifically the GSB Defendants, have sought or contended coverage for the Claims exists under the 2016 Policy. Nonetheless, in the event coverage under the 2016 Policy were sought, the absence of a report to ALPS of a potential or actual claim in the policy period of the 2016 Policy precludes coverage under the 2016 Policy.

Beduhn misconstrues the law; an insurer's obligation to defend exists only if there is a potential the claim is "rationally covered" by the policy. *Matlack v. Mtn. W. Farm Bureau Mut. Ins. Co.*, 2002 WY 60, ¶¶ 15-17, 44 P.3d 73, 80 (Wyo. 2002). As ALPS discussed *supra* in Section IV, there is no rational possibility of coverage for the Claims under the Policies.

For these reasons, Beduhn's breach of contract claim fails as a matter of law and ALPS is entitled to summary judgment on this basis.

### 2. Beduhn's Breach of Good Faith and Fair Dealing Claim Fails as a Matter of Law.

While conceding ALPS denied coverage for the Suits in a letter dated November 28, 2017 (Ex. C; ECF No. 10 ¶ 96), Beduhn contends "there was an immediate lack of communication" following the denial and further contends "ALPS has not discussed the merits of the claims" and that "ALPS's lack of communication, and this resulting Complaint in Federal Court, further show [its] unwillingness to communicate". (ECF No. 10 at 8-9, ¶¶ 12-14). As a matter of law, Beduhn has not asserted a claim for breach of good faith and fair dealing under Wyoming law.

Under Wyoming law, the "the appropriate test for determining whether there was bad faith is the objective standard of whether the validity of the denied claim was not fairly debatable." *Matlack*, 2002 WY 60, ¶ 19, 44 P.3d at 81 (citing *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 860 (Wyo. 1990)). To prove a claim for bad faith, a plaintiff must demonstrate "(1) the absence of a reasonable basis for denying benefits of the policy and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id. E.g.*, *McCullough*, 789 P.2d at 860 ("The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied

or delayed payment of the claim under the facts and circumstances."); *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 858 (10th Cir. 2015) ("Wyoming caselaw makes clear that an insurer enjoys a wide berth in this regard—viz., if a realistic question of liability does exist, the insurance carrier is entitled to reasonably pursue that debate without exposure to a [bad faith] claim[.]").

Here, an insured—specifically Beduhn—knew, prior to the effective date of the 2017 Policy, that his acts, errors, and omissions had resulted in the Bar Complaints (which expectedly matured into legal malpractice suits), complaints about his conduct from two sitting judges, and his replacement by a client as counsel together with contempt motions against the client. Such objective knowledge by an insured prior to the 2017 Policy's effective date plainly precludes coverage under unambiguous policy terms. Although the 2017 Policy affords no coverage—which of itself defeats Beduhn's bad faith allegation—to characterize ALPS's denial of coverage as anything other than "fairly debatable" would drain all meaning from the phrase.

Wyoming law also recognizes, in some limited circumstances, a claim for procedural bad faith in claims handling. *See Cornhusker*, 786 F.3d at 857 (recognizing procedural bad faith claims flowing from "engaging in oppressive and intimidating claim practices" in failing to properly investigate a claim). Such a claim, however, is not permissible here.

The court in *Cornhusker* determined:

> [A]pplying this failure-to-investigate rubric, the Wyoming Supreme Court has required a "compelling" factual showing and has declined to find even a "cursory examination of the case" or a "delay . . . showing [the insurer] drug its heels" sufficient to establish procedural bad faith. . . . Stated otherwise, unless it is evident that the insurer performed *no* form of satisfactory investigation, a procedural bad-faith claim will not be viable.

*Id*. at 859.

The Tenth Circuit in *Cornhusker* found instructive the Wyoming Supreme Court's decision in *Hatch v. State Farm Fire & Cas. Co.*, 842 P.2d 1089, 1099 (Wyo. 1992). The Tenth

Circuit found *Hatch* "powerfully demonstrates the egregious level of misconduct that typically gives rise to liability for procedural bad faith." 786 F.3d at 859. The Tenth Circuit court further described the standard for proving procedural bad faith under Wyoming law as a "high hurdle" which required conduct "beyond the pale." *Id.* Examples include conducting "rude, abrupt, sarcastic, unprofessional, and hostile" interviews of an insured; hiding exculpatory information related to the claim from the prosecutor in a related arson case; and demanding mental examinations of the insured's children. *Id.* at 860. The *Cornhusker* court rejected a procedural bad faith claim where the insurer "immediately investigated the accident" and "make a timely reservation of rights" even when the "handling of the claim was certainly not perfect" and there was evidence of "arguably flawed handling of the claim" by the insurer. *Id.* at 860. *See also Matlack*, 2002 WY 60, ¶ 20, 44 P.3d at 81 ("Given the limited and transparent nature of these facts, the trial court was well justified in finding no dispute of material fact concerning bad faith.").

Here, ALPS made a prompt response to the tender from the GSB Defendants and provided an analysis of its coverage position. (ECF No. 1 ¶ 96; ECF No. 19 ¶ 96; Ex. C). ALPS has taken a consistent position in this matter and has filed a declaratory judgment action with this Court for resolution of these issues. Reasonable minds could not differ that ALPS acted appropriately in all respects and ALPS is entitled to summary judgment on these bases.

> **3.    Beduhn's Claim for Breach of Representation and Warranties Fails as a Matter of Law.**

Beduhn also raises a cursory claim alleging "ALPS has failed [its] representation[s] and warranties in their policies", apparently because "Defendants (GSB and Beduhn) believed that these lawsuits were reported in a timely manner." (ECF No. 10 at 9, ¶ 16).

Following diligent review, ALPS is unable to identify a Wyoming case concerned with, or even discussing, Beduhn's alleged cause of action.   ALPS is familiar with contractual doctrines of warranty and misrepresentation by insureds in the context of insurance policy rescission, none of which is at issue in this instant matter.  *See, e.g.*, *Zolintakis v. Equitable Life Assurance Soc. of U.S.*, 97 F.2d 583, 586 (10th Cir. 1938) (a warranty in the law of insurance is a "statement or stipulation in the policy which is breached unless absolutely true or literally fulfilled", the breach of which by an insured can alleviate an insurer's obligations under the policy).  ALPS, however, is not familiar with a breach of representation and warranties case in this context involving the conduct of an insurer.  Moreover, Beduhn alleges no representation or warranty by ALPS, in the 2017 Policy or otherwise.

To the extent Beduhn, by this cause of action, merely attempts to restate his claim for breach of contract, such claim fails as a matter of law for the reasons discussed *supra* in Section IV.C.2.  This claim, like Beduhn's other claims, lacks merit and ALPS is entitled to summary judgment on this basis.

## V.   **CONCLUSION**

For the reasons discussed above, ALPS's Motion for Summary Judgment should be granted in its entirety and judgment should be entered in ALPS's favor against all Defendants as follows: (a) declaring the 2016 Policy does not afford coverage to the GSB Defendants for the Suits and ALPS has no duty to defend or indemnify the GSB Defendants under the 2016 Policy with respect to the Suits; (b) declaring the 2017 Policy does not afford coverage to the GSB Defendants for the Suits and ALPS has no duty to defend or indemnify the GSB Defendants under the 2017 Policy with respect to the Suits; and (c) dismissing Beduhn's Counterclaims as a matter of law.

Dated:  September 14, 2018

/s/ *Patrick M. Brady*

Paul Kapp, #5-2267
Patrick M. Brady, #7-5494
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Avenue
Cheyenne, Wyoming  82001
Telephone:  (307) 632-6421
Email:  pkapp@spkm.org

and

Kevin D. Hartzell (*pro hac vice*)
Brooke H. McCarthy (*pro hac vice*)
KUTAK ROCK LLP
1650 Farnam Street
Omaha, Nebraska  68102
Telephone: (402) 346-6000
Email: kevin.hartzell@kutakrock.com
Email: brooke.mccarthy@kutakrock.com

*Counsel for Plaintiff ALPS Property & Casualty
Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2018, I caused the foregoing document to be served via First Class mail and electronically filed with the Clerk of the Court using the CM/ECF system, to the following:

J. Travis Smith, Esq.
GOPPERT, ROHRBACH & SMITH
1309 Sheridan Avenue
Post Office Box 880
Cody, WY  82414
Email: jtsesq37@gmail.com

*Counsel for Defendant Goppert, Smith & Beduhn*

David M. Clark, Esq.
Christopher J. King, Esq.
GREEAR CLARK KING, P.C.
1112 Robertson Avenue
Post Office Box 552
Worland, WY  82401
Email: dave@greearclarkking.com
Email: chris@greearclarkking.com

*Counsel for Defendants Kurt Acton, Tanner Beemer, and Darold Brown*

Nick E. Beduhn, Esq.
2013 Shoshoni Trail South
Cody, WY 82414

*Pro Se via U.S. First Class Mail Only*

/s/ Patrick M. Brady
Patrick M. Brady