

FILED

11:37 am, 10/18/18

**Stephan Harris
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, | |
| Plaintiff, | |
| vs. | Case No: 18-CV-28-F |
| NICK E. BEDUHN; GOPPERT, SMITH & BEDUHN; KURT ACTON; TANNER BEEMER; and DAROLD BROWN, | |
| Defendants. | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff ALPS Property and Casualty Insurance Company's ("ALPS") Motion for Summary Judgment. (Doc. 24.). None of the Defendants filed a response. The Court's Local Rules allow the Court to consider the failure to file a responsive brief as a confession of the Motion. U.S.D.C.L.R. 7.1(b)(2)(A). To provide a complete record, the Court will substantively consider the merits of ALPS's motion. However, the Court will consider the facts provided in ALPS's motion to be undisputed. The Court has reviewed the motion and is fully informed in the premises. For the following reasons, ALPS's Motion for Summary Judgment is GRANTED.

### BACKGROUND

This suit stems from a dispute regarding coverage for malpractice claims against Defendants Nick Beduhn ("Beduhn") and Goppert, Smith, and Beduhn ("GSB"). Beduhn

was a licensed Wyoming attorney until August 24, 2017. (Doc. 1 [Compl.] at ¶ 2). He practiced at GSB in Cody, Wyoming. (*Id.* at ¶ 4).

During his time at GSB, several clients and judges submitted complaints to the Wyoming Office of State Bar Counsel ("Bar Counsel") regarding Beduhn. (Doc. 1-1 [Pl.'s Ex. 1] at ¶¶ 10-41). Darold Brown ("Brown"), a defendant in a child custody and visitation modification proceeding, filed a complaint with Bar Counsel on February 16, 2016. (*Id.* at ¶¶ 10, 15). In Brown's case, Beduhn failed to produce discovery and comply with court deadlines. (*Id.* at ¶ 13). As a result, the presiding district court judge ruled Brown could not "offer any witnesses or exhibits at trial." (*Id.*). Bar Counsel mailed a copy of Brown's complaint to Beduhn, asking for a response by March 3, 2016. (*Id.* at ¶ 15). Beduhn asked for an extension, and Bar Counsel granted it. (*Id.*). In the meantime, Bar Counsel began receiving emails about Beduhn's failure to withdraw from the case per Brown's request. (*Id.*). Bar Counsel then sent Beduhn a letter, informing him that he was "very concerned about the state of Beduhn's practice." (*Id.*).

Jeniffer Ribera, another client in a child custody case, filed a complaint on March 7, 2016. (*Id.* at ¶¶ 18, 19). In her case, Beduhn again failed to produce discovery, "which led to several motions to dismiss, motions to compel, and sanctions." (*Id.* at ¶ 18). Beduhn did not appear at a motion hearing, which led to the dismissal of Ribera's petition for modification of child support and sanctions in the amount of $4,100.00. (*Id.*). Ribera also alleged Beduhn failed to keep her informed of the status of her case. (*Id.* at ¶ 19). According to Ribera, Beduhn failed to tell her about a motion hearing until a few days before it took place. (*Id.*). Bar Counsel sent of a copy of Ribera's complaint to Beduhn,

2

asking him to respond by March 25, 2016 (*Id.* at ¶ 23). Again, Beduhn asked for an extension, which Bar Counsel granted. (*Id.*). Beduhn failed to respond by the extended deadline. (*Id.*). These developments prompted Bar Counsel to email Beduhn, expressing concern that his behavior was "harming [his] clients." (*Id.*). Bar Counsel informed Beduhn he would file a motion for immediate suspension under Rule 17 of the Wyoming Rules of Disciplinary Procedure unless Beduhn responded to pending complaints. (*Id.*). Beduhn requested an extension, and Bar Counsel granted it. (*Id.*).

Around the same time, two district court judges also filed complaints regarding Beduhn. (*Id.* at ¶ 26). On April 6, 2016, Judge John Fenn sent Bar Counsel a letter indicating Beduhn had failed to appear at two pretrial conferences during that year. (*Id.* at ¶ 27). Likewise, Judge Steven Cranfill wrote Bar Counsel on April 12, 2016, noting Beduhn failed to file pretrial memorandums in two custody cases. (*Id.* at ¶ 29). Judge Cranfill sanctioned Beduhn, and he was unable to call witnesses, other than his own client, and present evidence. (*Id.*).

After Judge Cranfill consulted Bar Counsel, one of the clients referenced in his filing, Tanner Beemer ("Beemer"), also filed a complaint. (*Id.* at ¶ 33). Beemer described Beduhn's failure to produce "discovery by the deadline" in his child custody case (*Id.*). Like Judge Cranfill, Beemer noted he was unable to call witnesses or present evidence at trial. (*Id.*). Beemer alleged he had to personally pay $575.85 in court sanctions, because Beduhn failed to do so. (*Id.*). Finally, Beemer noted the Wyoming Supreme Court dismissed an appeal of his case because of Beduhn's failure to meet deadlines. (*Id.*) Bar

3

Counsel sent Beemer's complaint to Beduhn, and Beduhn again asked for an extension to respond. (*Id.* at ¶ 34).

Besides Bar Complaints, Beduhn's conduct led to his replacement in the Kurt Acton ("Acton") matter. (Doc. 1-1 [Pl.'s Ex. 7 at 67]). On January 11, 2016, the Park County District Court entered a contempt order against Acton in his divorce proceeding. (*Id.*). After opposing counsel filed another motion for contempt against Acton on July 21, 2016, Acton obtained new counsel: Christopher King. (*Id.*).

On February 22, 2017, after the events described above, GSB purchased malpractice insurance. (Doc. 25-1 [Pl.'s Ex. A]). ALPS issued GSB a policy for the period of February 26, 2016 to February 26, 2017 ("2016 Policy") and another policy for the period of February 26, 2017 to February 26, 2018 ("2017 Policy"). (Doc. 1-2 [Pl.'s Ex. 8] at 2; Doc. 1-2 [Pl.'s Ex. 9] at 24). Both the 2017 Policy and 2016 Policy were "claims made and reported policies." (*Id.*). Thus, they provided that "the insured must immediately report any claim to ALPS during the policy period." (Doc. 1-2 [Pl.'s Ex. 8] at 3; Doc. 1-2 [Pl.'s Ex. 9] at 25). They further stated that "no coverage exists" if a claim "is first made against the insured or first reported to ALPS before or after the policy period." (*Id.*). The 2017 Policy also indicated ALPS would not cover claims made and reported during policy period if, by the effective date, the "Insured knew or reasonably should have known or foreseen that [a relevant] act, error, omission" could "be the basis of a Claim." (Doc. 1-2 [Pl.'s Ex 9] at 26).

On July 13, 2017, the Wyoming Board of Professional Responsibility ("Board") issued a report finding Beduhn breached duties owed to "clients, the legal system, and the

4

profession." (Doc. 1-1 [Pl.'s Ex. 1] at ¶ 44). The Board recommended a two-year suspension. (Doc. 1-1 [Pl.'s Ex. 1]). On August 24, 2017, the Wyoming Supreme Court adopted the Board's report and imposed the two-year suspension. (Doc. 1-1 [Pl.'s Ex. 2]). Later that year, several clients filed suits for legal malpractice: Acton, Beemer, and Brown. (Doc. 25-3 [Pl.'s Ex. C] at 5-7). On November 1, 2017, GSB notified ALPS of these suits. (*Id.* at 8). A few days later, Beduhn personally informed ALPS of these suits. (*Id.*). On November 28, 2017, ALPS denied coverage. (*Id.* at 1).

On February 12, 2018, ALPS brought suit in this Court, asking for a declaration that the 2017 Policy and 2016 Policy did not cover the suits brought by Acton, Beemer, and Brown. (Doc. 1 [Compl.] at 32, ¶¶ 1-2). ALPS also requested the Court to declare it had no duty to defend or indemnify GSB. (*Id.*). Beduhn filed an Answer on March 30, 2018. (Doc. 10). He also asserted counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and "breach of representation and warranties." (*Id.* at 7, ¶¶ 1-17). On September 14, 2018, ALPS filed a Motion for Summary Judgment. (Doc. 24). Defendants failed to file Responses within 14 days of ALPS's filing, as mandated by Local Rules. The Court issued an Order to Show Cause on or before October 8, 2018. (Doc. 27). Defendants failed to file any response.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is only appropriate if the pleadings and admissible evidence produced during discovery, together with any affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Western Diversified Services, Inc. v.*

5

*Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* The non-moving party is entitled to all reasonable inferences from the factual record, which is viewed in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, to defeat summary judgment, a plaintiff must support the claim with more than conjecture and speculation. *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006). The burden of persuasion rests squarely on the moving party. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 980 (10th Cir. 2002).

## DISCUSSION

### I. Scope of ALPS's Coverage Under the 2016 Policy

The first issue is whether the 2016 Policy excluded Acton, Beemer, and Brown's claims from coverage. This is a diversity case. Therefore, the Court applies Wyoming law regarding contract interpretation. *Progressive Cas. Ins. Co. v. Brown's Crew Car*, 27 F. Supp. 2d 1288, 1291 (D. Wyo. 1998). Under Wyoming law, courts seek to ascertain the parties' intent when interpreting insurance policies. *Gainsco Ins. Co. v. Amoco Prod. Co.*, 2002 WY 122, ¶ 7, 53 P.3d 1051, 1056 (Wyo. 2002). To do so, they look to the language of the policy and give words their plain meaning. *Id.* If the language is unambiguous, courts confine their analysis to the four corners of the document and do not look to extrinsic evidence. *N. Fork Land & Cattle, LLLP v. First Am. Title Ins. Co.*, 2015 WY

150, ¶ 14, 362 P.3d 341, 346 (Wyo. 2015). Conversely, they will consider extrinsic evidence if the language is ambiguous. *Id.* Language is ambiguous if words are "capable of more than one reasonable interpretation." *Id.* (quoting *Doctors' Co. v. Ins. Corp. of America*, 864 P.2d 1018, 1023-24 (Wyo. 1993)).

In this case, the 2016 Policy was a "claims made and reported" policy. The 2016 Policy excluded coverage "for a claim which [was] first made against the insured or first reported to ALPS before or after the policy period." This language unambiguously indicated that ALPS would not provide coverage for claims GSB reported after the expiration of the policy period. Since this language is unambiguous, the Court need not look to extrinsic evidence. Rather, the Court only must consider whether GSB and Beduhn reported the claims of Acton, Beemer, and Brown before the expiration of the 2016 Policy.

Here, the 2016 Policy provided coverage from February 26, 2016 to February 26, 2017. GSB and Beduhn did not inform ALPS of Acton, Beemer, and Brown's claims until November 2017. Thus, GSB and Beduhn did not report these claims before the expiration of the 2016 Policy. These claims were not covered by the 2016 Policy.

The Court would also note that ALPS had no duty to defend under the 2016 Policy. While Wyoming courts recognize the duty to defend is broader than the duty to provide coverage, this duty only extends to claims "rationally covered" by the policy. *Matlack v. Mt. W. Farm Bureau Mut. Ins. Co.*, 2002 WY 60, ¶ 15, 44 P.3d 73, 80 (Wyo. 2002). As described above, the 2016 Policy did not extend to the claims of Acton, Beemer, and Brown, as GSB reported these claims after the expiration of the policy

period. Thus, those claims were not rationally covered by the 2016 Policy, and ALPS had no duty to defend GSB under the 2016 Policy. For these reasons, ALPS's Motion for Summary Judgement on coverage under the 2016 Policy is GRANTED.

**II.     Scope of ALPS's Coverage Under the 2017 Policy**

Next, the Court must determine whether the 2017 Policy also excluded the claims of Acton, Beemer, and Brown from coverage. As noted above, when interpreting insurance policies, Wyoming courts will only look to the four corners of the policy if its language is unambiguous. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo.1993). Here, the 2017 Policy provided that ALPS's coverage obligations did not extend to claims reported during the policy period if the insured knew of an "act, error, or omission" that "might be the basis of [the] Claim" as of the policy's effective date. This language clearly indicated ALPS would not cover a claim if the insured knew of the events giving rise to the claim before the effective date of the policy. Since the language is unambiguous, the Court need not look to extrinsic evidence. Rather, the Court must only consider whether the 2017 Policy excluded the claims of Acton, Beemer, and Brown.

The 2017 Policy became effective on February 26, 2017. At this time, Beduhn and GSB knew three clients, including Brown and Beemer, and two judges had filed Bar complaints in the previous year. Those complaints revealed Beduhn routinely failed to meet deadlines, produce discovery, and communicate with clients. Further, his conduct frequently led to court sanctions and unfavorable outcomes. Bar Counsel asked Beduhn to respond to these complaints. Bar Counsel even emailed Beduhn to express his concern

with the state of Beduhn's practice and to suggest Beduhn might be harming his clients. Bar Counsel stated he would move for the immediate suspension of Beduhn's license because of his behavior. With each complaint, Beduhn corresponded with Bar Counsel and sought extensions. Likewise, Beduhn and GSB also knew Beduhn's conduct in Acton's case led to a contempt order and his replacement in that case. GSB admitted that "[b]y August 10, 2016, when King replaced Beduhn as Acton's counsel in the Acton Divorce Suit, Beduhn knew or reasonably should have known or foreseen he had breached a professional duty owed to Acton in the Acton Divorce Suit and that Beduhn's conduct in the Acton Divorce Suit might be the basis of a claim against Beduhn by Acton." (Doc. 1 [Complaint] at ¶ 135); Doc. 19 [GSB Answer] at ¶ 135).

Considering these complaints, Bar Counsel's correspondence with Beduhn, and Beduhn's replacement in the Acton matter following a contempt order, Beduhn and GSB reasonably knew malpractice claims were on the horizon when they applied for the 2017 Policy. Nonetheless, they failed to disclose these issues at the time they applied for that policy. Indeed, the 2017 Application did not identify the Bar complaints or Beduhn's replacement in the Acton case. (Doc. 25-1 [Pl.'s Ex. A] at 4). It did not disclose any potential claims against GSB, including claims against Beduhn. (*Id.*). On that application, GSB answered "no" to the question: "Are you or any member of the firm aware of or do you or any member of your firm have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis for a claim against any current or former attorney in the firm or its predecessors, regardless of the merit of such claim that has not already been reported to ALPS?" (*Id.*). GSB also answered "no" to the

question: "Has any member of the firm had an investigation, inquiry, or disciplinary complaint made to any court, administrative agency, or regulatory body in the past year?" (*Id.*). GSB also answered "no" to the question: "Has any attorney in your firm . . . been formally reprimanded by any court, administrative agency or regulatory body in the past year; or is any attorney under investigation?" (*Id.*). The application was dated February 22, 2017. (*Id.* at 5).

It is undisputed that Beduhn was aware of the Brown, Beemer, and Ribera Bar complaints prior to the submission of ALPS's application on February 22, 2017. Likewise, he knew of the Park County District Court's issuance of a contempt order in the Acton case and his subsequent replacement in that case. While these facts support a claim for rescission, at a minimum they clearly demonstrate that GSB "knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim" prior to the February 26, 2017 effective date of the 2017 Policy.[1] Given the unambiguous policy language described above, the 2017 Policy did not afford coverage for the claims of Acton, Beemer, and Brown.

Finally, the Court finds ALPS also had no duty to defend under the 2017 Policy. As previously noted, the duty to defend only extends to claims "rationally covered" by the policy. *Matlack.*, ¶ 15, 44 P.3d at 80. Acton, Beemer, and Brown's claims were not "rationally covered" by the 2017 Policy, as GSB and Beduhn "knew or reasonably should have known" of the actions that gave rise to these claims before the effective date of that

---

[1] ALP's original denial of coverage letter indicated that it was rescinding the 2017 Policy based on misstatements in the Application. (Doc. 25-3 [Pl's Ex. C]). However, in this case, ALPS is not pursuing rescission. Rather, it is relying on the 2017 Policy language to deny coverage.

10

policy. Thus, ALPS had no duty to defend GSB. For these reasons, ALPS's Motion for Summary Judgment related to the 2017 Policy is GRANTED.

### III. Beduhn's Counterclaim for Breach of Contract

ALPS also seeks to dismiss Beduhn's counterclaim for breach of contract. To demonstrate breach of an insurance contract, "the insured must show the existence of a contract, a breach and damages." *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 25, 123 P.3d 579, 589 (Wyo. 2005). As noted above, the 2016 Policy excluded claims the insured failed to report during the policy period. GSB and Beduhn did not report the relevant claims during the 2016 Policy period, and that policy did not afford them any coverage. Likewise, the 2017 Policy did not provide coverage for claims the insured knew would arise because of acts, errors, or omissions that occurred before the policy's effective date. By the effective date of the 2017 Policy, GSB and Beduhn were aware of five Bar complaints, including those of Brown and Beemer, and Beduhn's replacement in the Acton case following a contempt order. They should have been aware legal malpractice claims were coming. As such, the claims of Acton, Beemer, and Brown were outside the scope of coverage afforded by the 2017 Policy. Since both policies excluded the claims of Acton, Beemer, and Brown from coverage, ALPS did not breach its contract with Beduhn. Rather, it abided by the unambiguous terms of the policies when it denied coverage. Beduhn's conclusory allegations that "[t]he Defendants' malpractice suits were not foreseen" and that the "suits have not been adjudicated" do nothing to change this conclusion. (Doc. 10 [Beduhn Answer] at 7, ¶ 2). This

counterclaim fails as a matter of law, and ALPS's Motion for Summary Judgment is GRANTED on Beduhn's counterclaim for breach of contract.

### IV. Beduhn's Counterclaim for Breach of the Duty of Good Faith and Fair Dealing

ALPS also seeks dismissal of Beduhn's counterclaim for breach of the duty of good faith and fair dealing. In the realm of insurance contracts, Wyoming courts determine bad faith by assessing "whether the validity of the denied claim was not fairly debatable." *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 860 (Wyo. 1990). To demonstrate bad faith, claimants must put forth evidence to meet a two-part test. *Darlow v. Farmers Ins. Exch.*, 822 P.2d 820, 824 (Wyo. 1991). First, they must demonstrate "the absence of a reasonable basis for the insurer to deny the benefits of the policy." *Id.* Second, they must prove the insurance company knew there was no reasonable basis to deny the claim. *Id.*

As noted above, the 2017 and 2016 policies unambiguously excluded Acton, Beemer, and Brown's claims from coverage. Thus, ALPS had a reasonable basis to deny benefits. Beduhn's allegations that the malpractice claims were "unforeseeable" and that ALPS failed to communicate with him do not demonstrate otherwise. (Doc. 10 [Beduhn Answer] at 8, ¶¶ 9, 12-14). The Court finds ALPS's Motion for Summary Judgment is GRANTED as to Beduhn's counterclaim for breach of the duty of good faith and fair dealing.

## V. Beduhn's Counterclaim for "Breach of Representation and Warranties"

Finally, ALPS seeks dismissal of Beduhn's counterclaim for "breach of representation and warranties." To support this claim, Beduhn alleges he and GSB reported the malpractice claims in a "timely manner." (Doc. 10 [Beduhn Answer] at 9, ¶ 16). The Court, like ALPS, struggles to locate case law that clarifies Beduhn's alleged claim. In failing to respond to ALPS's Motion for Summary Judgment, Beduhn and GSB passed up a chance to further explain this allegation to the Court. Without more briefing and citation on this matter, the Court simply cannot entertain this claim. This counterclaim fails as a matter of law, and the Court finds ALPS's Motion for Summary Judgment is GRANTED as to Beduhn's claim for "breach of representation and warranties".

## CONCLUSION

For all the above stated reasons, the Court finds the 2017 Policy and 2016 Policy excluded Acton, Beemer, and Brown's malpractice claims from coverage. Thus, the Court finds ALPS had no duty to defend or indemnify GSB. Finally, the Court finds that Beduhn's counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and "breach of representation and warranties" fail as a matter of law.

IT IS ORDERED that ALPS's Motion for Summary Judgment is GRANTED.

Dated this 18 day of October, 2018.

_/s/ Nancy Freudenthal_
NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE